ALDRICH *et al.* v. COLLINS, Supervisor, *et al.*

1. Town supervisors are the agents of the town, and possess only such powers as are expressly conferred upon them by statute, or as are necessary to enable them to perform the duties imposed upon them by law.

2. They are authorized to assess and levy a highway labor and road tax upon all the taxable property within the town, but its collection and expenditure is placed under the control of road overseers, except such highway labor and road taxes as may become delinquent and are collected by the county treasurer, and such unexpended taxes as shall be paid over to them by road overseers.

3. No power is conferred upon town supervisors to appropriate or expend any money for the construction or repair of highways other than the sums derived from the two sources above mentioned, unless money for such purpose shall be raised by a vote of the electors at their annual town meeting, which latter sum may be expended by the town supervisors in such manner as the electors, at the annual town meeting, may direct.

4. Town supervisors have no authority to appropriate or expend in the construction or repair of highways any funds raised for ordinary town charges, as "money raised by taxation, loan, or assessment for one purpose cannot be diverted to any other."

5. The electors of a town at their annual town meeting may vote to raise such a sum for the construction and repair of roads and bridges as they may deem expedient, and the sum so voted to be raised may be appropriated by them for the construction and repair of highways within their own or an adjoining town, as they deem proper. But the electors have no power to appropriate any sum for such construction or repair of highways except when they have voted to raise the sum by taxation. The power to appropriate is limited to the sum voted to be raised. They have no control over any other fund for that purpose.

6. A resolution, adopted by the electors at their annual town meeting, to keep all the funds of the town in one general fund, is without authority of law, and void. The town treasurer must, at his peril, keep the funds of the town separate, and pay them out only upon warrants drawn upon the proper fund.

(Syllabus by the Court. Opinion filed June 18, 1892.)

Appeal from circuit court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

Action against the board of supervisors of Sioux Falls township, to set aside their proceedings in appropriating money to improve certain highways. Judgment against the board. Defendants appeal. Affirmed.

The facts are stated in the opinion.

*Davis, Lyon & Gates* and *Winsor & Kittredge*, for appellants.

The supervisors are the general agents of the town, have charge of all its affairs, have general management of highways ,and authority to appropriate and expend money for their care and maintenance.   Comp. Laws, §§ 716, 772, 813, 1264, 1272, 1300 and 1302.

*W. A. Wilkes*, for respondents.

The supervisors of a town have no authority to consolidate the different funds.   Dill. Mun. Corp. 104; article 10, § 2, and article 13, § 5, Const.

The appropriations of the supervisors were illegal and could not be ratified by the town.   People v. Van Keuren, 74 N. Y. 315; *Id.* v. Supervisors, 93 N. Y. 402; Hubbard v. Town, 28 Wis. 677; Mitchell v. Board, 24 Minn. 459; Clark v. Des Moines, 19 Iowa, 199; Dill. Mun. Corp. § 12.

CORSON. J.   This is an appeal from a judgment of the circuit court adjudging illegal and void the proceedings of the town board of supervisors of Sioux Falls township appropriating $5,500 for the improvement of four certain highways in that township; also adjudging illegal and void the proceedings of a special town meeting of said town held for the purpose of appropriating said sum of $5,500 for the purposes aforesaid, and ratifying and confirming the acts of said town board of supervisors in making said appropriation; and also adjudging illegal and void certain town orders issued for $1,300 by the said town supervisors on account of the improvement of said designated highways.   The records and proceedings of said town supervisors, said special town meeting, and the treasurer of said town were brought before the court below for review by writ of *certiorari*.   From the returns and supplemental returns to said writ it appears that on March 31, 1891, at a regular meeting of the board of town supervisors of said town, a resolution was adopted by said board levying a road tax of five mills on the dollar upon all property in said town; and that at the same meeting a resolution was adopted appropriating $5,500 for the repairs and improvement of four designated highways in said town.   It further appears that said board had issued town orders for $1,300 on account of said improvements, which had been paid by the town treasurer before the issuance of the writ

in this case. It further appears that, after the writ was issued, and while these proceedings were pending in the court below, the town clerk, upon a petition filed, called a special town meeting, at which a majority of the electors present voted to appropriate the said sum of $5,500 for the purposes aforesaid, and voted to ratify and confirm the acts of said town supervisors in making said appropriation, which proceedings were brought before the court by a supplemental return. The town treasurer, in a supplemental return, set forth that he had in his possession and under his control $4,199.44, less the sum of $1,300 paid on town orders drawn by the supervisors on account of the said improvements, and certain other small sums paid on orders of the board; but to what fund or funds it belonged, or of what fund or taxes it was made up, does not appear, as all the funds belonging to the town were kept in one general fund, under a resolution adopted at the annual town meeting of that year. Upon these returns the court below rendered the judgment before referred to, and the question to be considered is, did the court err in holding all these proceedings illegal and void?

The learned counsel for the appellants contend—First, that the town supervisors were authorized to make the appropriation for the purposes specified; and, second, if not so authorized when the resolution was adopted, the act was made valid by the subsequent appropriation made by the electors of the township at the special town meeting, and by ratifying and confirming the acts of the supervisors, as the electors at such special town meeting had full power to make the appropriation, and full power to ratify the act of the board of supervisors in making the same. Two questions are therefore presented for our consideration: First. Had the town board of supervisors authority to appropriate the amount specified for the improvement of the designated highways? Second. If not, had the electors power at a special town meeting to appropriate the amount, and ratify and confirm the acts of the town supervisors in making the appropriation?

1. Town supervisors are the agents of the town, and possess only such powers as are expressly conferred upon them by statute, or as are necessary to enable them to perform the duties required

of them by law.    The general powers and duties of town supervisors are defined by section 772, Comp. Laws, as follows:   "The supervisors shall have charge of such affairs of the town as are not by law committed to other town officers, and they shall have power to draw orders on the town treasurer for the disbursement of such sums as may be necessary for the purpose of defraying the incidental expenses of the town, and for all moneys raised by the town to be disbursed for any other purpose."   The powers and duties pertaining to the highway labor and road tax in ordinary cases are prescribed by sections 768, 1264, 1271, and 1272, Comp. Laws.   Section 768 provides that "at their meeting in March * * * (they) shall assess the highway labor and road tax for the ensuing year, and perform all the duties required of them by section 1271."   Section 1264 is as follows:   "The supervisors in the several towns in this territory shall have the care and superintendence of roads and bridges therein, shall give directions for the repairing of the roads and bridges in their respective towns, regulate roads already laid out, and alter each of them, as they, or a majority of them, deem proper, as hereinafter provided; divide the respective towns into so many road districts as they deem convenient, by writing under their hands, to be lodged with the town clerk, and by him entered in the town records; such division to be made annually, if they deem it necessary, and in all cases to be made within at least twenty days before the annual town meeting.   They shall assign to each of the said road districts such of the inhabitants liable to work on highways as they think proper, having regard to proximity of residence; and require the overseers of highways, as often as they deem it necessary, to warn all persons liable to work on roads to come and work thereon, with such tools, carriages, cattle, or teams as the said overseers, or either of them, shall direct."   Section 1271 provides that "the town clerk shall deliver the list filed by overseers to the supervisors, who shall proceed to ascertain, estimate, and assess the highway labor and road tax to be performed and paid in their town the next ensuing year."   And section 1272 provides:   "* * * Supervisors shall assess a road tax on all real estate and personal property liable to taxation of the town

to any amount they may deem necessary, not exceeding one dollar on each one hundred dollars of value as valued on the assessment roll of the preceding year," etc. The highway labor and road tax thus assessed and levied by the supervisors, is placed for collection and expenditure under the control of road supervisors, who are required "to repair and keep in order the roads within their respective districts, warn all persons from whom labor is due to work on highways at such times and places within their said districts as they may think proper, collect all fines and commutation money," (that is, money for the real and personal property tax in lieu of labor.) Section 1266, Comp. Laws. This highway labor and road tax is by statute required to be expended within the road district in which the person charged with the tax resides, or in which the property taxed is situated. Sections 1276, 1278, Comp. Laws. With the collection and expenditure of this tax the town supervisors have no duties to perform other than to generally supervise the overseers of highways in the performance of their duties, except as to such taxes as shall be returned delinquent by the overseers of highways, as provided in section 1291, and as to such sums as may be paid over to the town treasurer by the road overseers, as provided by section 1294; which sums are to be expended by the town supervisors upon roads and bridges. No power seems to have been, by any provisions of the statute, conferred upon the town supervisors to appropriate or expend any money upon highways other than the money derived from the two sources above specified, unless money for such purposes shall be raised by the vote of the electors,—which will be discussed under our second point. Whether or not the funds in the hands of the town treasurer included any delinquent highway labor and road tax or surplus money paid over by the overseers of highways does not appear from the returns, and hence we must presume no such funds were included. As the statute provides that the ordinary highway labor and road tax shall be expended under the supervision of road overseers, and within their respective road districts, and that the money paid as a commutation for such labor shall be collected and expended by the road overseers within their respective districts, the town supervisors have no power to appropriate

and expend such taxes, or any part thereof, on any particular high-
way, except such part as may be returned as delinquent, and col-
lected by the county treasurer, or as may remain as surplus, and
be paid over to the supervisors by the road overseers.   And it
cannot be seriously contended that the supervisors can divert the
funds raised and collected for incidental town expenses to the
improvement of highways, as funds raised "by taxation, loan, or
assessment for one purpose shall not be diverted to any other."
Section 2, art. 10, Const.; Dill. Mun. Corp. (3d Ed.) § 603, and cases
there cited.   The supervisors are not authorized to contract any
debt against the town for the purpose of improving the highways,
except in the manner pointed out in article 22, Pol. Code, (sections
829-836, Comp. Laws.)   No proceedings seem to have been taken
under these sections.   Our conclusions are, therefore, that the
town supervisors did not possess the power to make the appropri-
ation in question, and that the acts of the board in making such
appropriation were illegal and void.

2. This brings us to the second question:   Had the electors, at
the special town meeting, the power to make the appropriation,
and ratify and confirm the acts of the town supervisors in making
the same?   By section 716 it is provided that "the electors of each
town have power at their annual town meeting   *   *   *   (8) to
vote to raise such sums of money for the repair and construction
of roads and bridges, for the support of the poor, and for other
necessary town charges, as they deem expedient."   By this sec-
tion express power is conferred upon the electors at their annual
town meeting to raise a fund for roads and bridges, separate from
and independent of the ordinary highway labor and road tax that
may be assessed and levied by the board of town supervisors.
This fund, so voted, may be appropriated by the electors for the
construction and repair of such highways and bridges as they may
deem proper.   Power is conferred by the proviso to said subdivi-
sion 8 to appropriate such part of the amount so voted to be raised
as the electors may deem proper for the repair and construction
of highways in an adjoining town, and clearly indicates the in-
tention of the legislature that the electors may appropriate such
sum, or any part thereof, for the construction and repair of high-

ways within their town. The intention of the legislature, as ap
pears from the various provisions of the statute, evidently is to
confer upon the town supervisors the power to assess and levy
the ordinary highway labor and road taxes to be collected and
expended within the several road districts by overseers of the
highways, without special authority from the electors, subject to
the limitation as to the rate above specified; and that it was also
the intention of the legislature to confer upon the electors power
to raise such sum as they may deem expedient to be expended
by the town supervisors, either in an adjoining town, or on such
highways and bridges within their town, as may require an extra
expenditure of money. But the power to appropriate money for
the construction and repair of highways and bridges by the elect-
ors is dependent upon the power to vote the tax, and is connected
therewith. The power to appropriate is not an independent
power, and cannot be exercised except as to the sum so voted to
be raised by the electors. They have no control over any other
fund for this purpose.

It will be observed that the electors at their special town meet-
ing did not vote to raise any fund, but simply assumed to ap-
propriate the $5,500; but out of what fund does not appear. As-
suming that the electors at the special town meeting had the same
power to vote to raise a road and bridge fund as at the annual
town meeting,—but without deciding that question,—still we
think they had no power to appropriate the sum named, except
in connection with a vote to raise the amount by taxation. If
there were funds in the hands of the town treasurer·derived from
delinquent highway labor and road taxes collected by the county
treasurer, or from surplus highway labor and road taxes paid over
to the supervisors by overseers of highways, the supervisors were
authorized to expend such fund upon the roads and bridges with-
out a vote of the electors. If there was no such fund, then no ap-
propriation could be made by the electors, unless the amount was
first voted to be·raised by the said electors. As before stated,
the electors, at their special town meeting, did not vote to raise
the $5,500 by taxation, but assumed to appropriate that amount.
As we have seen, they could not appropriate the ordinary town

funds, collected to pay the ordinary town charges, to any such purpose, nor could they appropriate the ordinary road taxes. But it is contended that all the town funds were placed in one fund, which might have included road and bridge taxes, and hence the action of the electors was legal; but the action of the electors at the annual town meeting, in voting to place all the town funds in one general fund, was clearly without authority. The town treasurer must, at his peril, see that the funds derived from taxation are kept in separate funds, and only paid out upon town orders drawn upon the proper fund. Not only are the supervisors limited and restricted in the exercise of their powers, but the electors also possess only such powers as are conferred upon them by statute. No power seems to be conferred upon the electors to appropriate money for highways, except the same is voted to be raised by them by taxation. They have no control over any other fund for that purpose. Their action, therefore, at the special town meeting, was clearly without authority, and invalid. The statute is the charter under which the electors and town officers act, and its provisions must be strictly followed. It is possible that the town treasurer had in his hands or under his control highway labor and road taxes sufficient to pay the $1,300 in town orders drawn by the town supervisors, and which the supervisors were authorized to expend upon the highways; but, if so, both he and the supervisors have failed to make the fact appear by their return, and the court below was therefore justified in holding such orders void. If there was a fund for the payment of such orders, it was the duty of the treasurer to so return, but he seems to have proceeded upon the theory that the illegal order of the electors, adopted at the annual meeting, would protect him. Our conclusions are, therefore, that upon the returns made to the writ the court committed no error in holding the acts of the supervisors in appropriating the $5,500 illegal and void, the acts of the electors in their special town meeting appropriating that amount illegal and void, and the warrants drawn by the supervisors upon the treasurer for the work done upon the designated highways illegal and void. The judgment of the court below must therefore be affirmed, and it is so ordered. All the judges concur.