John B. HART, Plaintiff and Respondent,

v.

Clarence BYE, Arthur Lindbo, Walter Tastad, Bennie Haagenson, and Edward Jollie, as the Board of County Commissioners of Rolette County; and C. A. Berg, as County Auditor of said County, Defendants and Appellants.

No. 7572.

Supreme Court of North Dakota.

March 12, 1956.

Rausch & Chapman, Bismarck, for defendants and appellants.

Duffy & Haugland, Devils Lake, for plaintiff and respondent.

MORRIS, Judge.

The plaintiff is a citizen and taxpayer of Rolette County and brings this action on his own behalf and on behalf of others similarly situated. The defendants are the county auditor and members of the board of county commissioners of Rolette County.

On June 1, 1948, the board of county commissioners, purporting to act pursuant to Chapter 125, SLND 1947—see Chapter 11-32, NDRC 1953 Supp.—adopted a resolution wherein it was recited:

"that there be and there hereby is created a World War II Memorial Fund for the purpose of erecting a County Office Building as a Memorial in commemoration of the people of the County who lost their lives in the service of their country or rendered distinguished services during World War

II; And that there be and there hereby is levied by the Board of County Commissioners of . Rolette County for the years 1948, 1949, 1950, and 1951, an annual irrepealable tax of four mills upon all of the taxable property subject to taxation in said Rolette County; And that the moneys collected and received from such four mill tax be paid into such World War II Memorial Fund for the purpose of erecting a County Office Building to provide suitable space for County Officers, Court space and Veteran's Room."

On December 4, 1951, the board of county commissioners, acting under Chapter 113, SLND 1951, passed a resolution adding to the levies already made a levy of four mills for the year 1952. It recited:

"that there be and there hereby is levied by the Board of County Commissioners of Rolette County, in the year 1952 an annual irrepealable tax of 4 mills on the dollar upon the said valuation of all the property in said Rolette County; and that the monies so collected and received from such 4 mill tax in said year to be paid into the heretofore created World War II Memorial Fund for the purpose of erecting a County Office Building."

On November 19, 1952, the board of county commissioners by a vote of four to one adopted a resolution wherein it was declared that:

"it appearing that there is now on hand in the Memorial Fund of Rolette County, North Dakota, a sum of approximately $80,000.00 and an expected additional $24,000.00 from the 1952 levy, which sum, may be divided by the Commissioners of Rolette County among the American Legion Posts which may be chartered at the time of disbursement. And it appearing to this Board that the just, fair and equitable thing to do in this case is to divide the said fund equally among all the said Posts.

"Now, Therefore, Be It Resolved by the Board of County Commissioners

of Rolette County, North Dakota, that the fund be divided in equal proportion among the American Legion Posts within the County of Rolette which shall be duly chartered and recognized as active posts by the American Legion Department of North Dakota at the time of disbursement of said fund, to be used by such posts for the purpose of erecting a suitable memorial or memorials or other suitable recognition. .

"Be It Further Resolved by the Board of County Commissioners of Rolette County, North Dakota, that the resolution passed at the Adjourned Regular Meeting of the said Board of County Commissioners at 10:00 o'clock A.M. June 1st, 1948, wherein it was stated that a memorial office building be constructed with said money, be and the same is hereby in all things rescinded."

The plaintiff seeks to have the defendants enjoined from diverting the funds levied pursuant to the foregoing resolutions from the purpose of erecting a county office building as a memorial to those who rendered service during World War II and further asks that they be particularly enjoined from dividing the funds among the Legion Posts of Rolette County.

The trial was had on September 2, 1955. At that time the tax levies had been mostly collected and there was in the memorial fund approximately $107,000.

The court rendered judgment determining that the resolution adopted by the county commissioners on November 19, 1952, is void and it decreed

"That the defendants be enjoined from diverting any of the moneys in said Memorial Fund from the purpose for which the same was levied and collected, viz.: The erection of 'a county office building as a memorial in commemoration of the people of the county who lost their lives in the service of their country or rendered distinquished services during World War II', and

that in particular they be enjoined from dividing said fund or any part thereof among the Legion Posts of Rolette County."

From this judgment the defendants appeal and demand a trial anew in this court.

■ Chapter 125, SLND 1947 not only provides how a memorial fund may be raised or accumulated but also provides by whom the money shall be spent. The memorial or other suitable recognition must be erected within the county at a place determined upon by the board of county commissioners. The money in the fund must be kept separate from other moneys by the county treasurer and be expended by and under the directions and control of the board of county commissioners. The resolution of November 19, 1952, purports to divide the money among the Legion Posts of Rolette County. Such a disposition of the memorial fund is clearly violative of Chapter 125, SLND 1947 in that it attempts to vest in organizations other than the board of county commissioners the spending of the money in derogation of the specific terms of the statute. That resolution is therefore wholly void and the court's judgment with respect thereto is correct.

The judgment in addition to enjoining the carrying out of the resolution of November 19, 1952, also in general terms enjoins the board of county commisisoners from diverting any of the moneys in the memorial fund from the purpose of the erection of a county office building as a memorial.

The problem that now confronts us is whether the provisions in the resolutions stating that the tax levies were being made for the purpose of erecting a county office building allocated the money to be raised to that purpose so that no subsequent board of county commissioners could change the form or type of memorial or other suitable recognition to be erected and that any diversion of the funds from the purpose of erecting a county office building would be unlawful.

It is argued by the defendants that certain constitutional provisions are applicable here. These provisions are Section 175 of the North Dakota Constitution:

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied."

and Section 130:

"The legislative assembly shall provide by general law for the organization of municipal corporations restricting their powers as to levying taxes and assessments, borrowing money and contracting debts, and money raised by taxation, loan or assessment for any purpose shall not be diverted to any other purpose except by authority of law."

■ Section 175 is a direction to the legislature and prescribes a standard by which a law providing for the levy of a tax may be measured. In Stinson v. Thorson, 34 N.D. 372, 158 N.W. 351, 354, which involved the transfer of funds by a school board from the teachers' to the general fund of the district, it was said:

"That section, in so far as it requires taxes to be applied to the object for which they are imposed has to do only with taxes *imposed by law for general state purposes.*"

The legislature met the requirements of this section when it provided by Chapter 125, SLND 1947 that the taxes levied pursuant to the statute might be levied for the purpose of erecting the memorials or other suitable recognitions as therein specified. Section 175 has no application under the facts in this case.

■ Section 130 deals exclusively with municipal corporations. It has no application to counties. Under Section 130 municipal corporations are creatures of the legislature over which the legislature has full control, subject to the restrictions of that section. Counties on the

other hand are creatures of the constitution itself provided for in Sections 166 to 173 inclusive. Governing bodies of counties are provided for in the constitution. Section 170 directs the legislature to provide optional forms of government. Section 173 requires the election of certain officers of counties who are constitutional officers. Counties are not governed or affected by the provisions of Section 130.

Counties are not municipal corporations under our law. They are political subdivisions of the state which are sometimes properly termed public corporations. Divide County v. Baird, 55 N.D. 45, 212 N.W. 236, 51 A.L.R. 296; Rosedale School District No. 5 v. Towner County, 56 N.D. 41, 216 N.W. 212; McQuillin, Municipal Corporations, Third Edition, Section 2.46.

The statute states the purpose for which the levy may be made. A resolution making the levy need be no more specific as to purpose than the statute itself. In this case the board went beyond the requirements of the statute and stated that the fund was to be used for the erection of a county office building. This statement insofar as the validity of the levy was concerned was surplusage. But was it nevertheless binding upon the board as to the expenditure of the fund that was to be raised? On this point we give further consideration to the statute and the nature of the fund.

The statute vests in the board a broad discretion with respect to expenditure. In Gehrke v. Board of County Commissioners, 58 N.D. 407, 226 N.W. 536, 539, we construed a similar statute and said:

"But the statute delegates the power to the board, without restriction, to determine both the questions of whether a memorial shall be erected and where it shall be erected. It does not contemplate that these questions are to be determined by popular vote, or by petition, or by remonstrance. The statute imposes upon the board itself the duty of passing upon these questions. It alone is made responsible. The board, of course, may consider petitions or remonstrances, if it sees fit to do so; but it is not bound thereby. The commissioners must exercise their discretion in the matter, and, having done so, the fact that their judgment is counter to that of a large number of the citizens of their county is not alone sufficient reason for interfering with their determination."

The first levy was made for four years and later another year was added. Thus the accumulation of the fund extended over a period of some five years. The board may erect the memorial with county funds or may join with other specified agencies. This is an indication that where the memorial is to be erected and the form it is to take are to be determined when the money is available and not when the levy is made. The money to be used must be in the fund. The county may not go into debt. When the tenor of the whole statute is considered it seems clear that the discretion of the board as to how the money is to be spent may not be exercised until the time has come to make the expenditure. That is the proper time to determine the needs of the community and the appropriateness of the memorial to be erected. We therefore reach the conclusion that the board of county commissioners exceeded its authority in attempting to allocate the fund to the erection of a county office building at the time the levy was made. To the extent that the judgment enjoined the defendants from diverting any moneys in the memorial fund from the purpose of erecting a county office building it is reversed, otherwise the judgment is affirmed.

BURKE, C. J., SATHRE and GRIMSON, JJ., and A. J. GRONNA, District Judge, concur.

JOHNSON, J., did not participate.